# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HANNA ALNAHHAS and BARBARA ALNAHHAS, <br><br> Plaintiffs, <br><br> vs. <br><br> ROBERT BOSCH TOOL CORPORATION; SKIL TOOLS, and CPO COMMERCE, INC., <br><br> Defendants. | Case No. CIV-13-178-D |

## **O R D E R**

Plaintiff Hanna AlNahhas was injured while operating a random orbit sander manufactured by Defendant Robert Bosch Tool Corporation ("Bosch"). Under tort theories of strict products liability, negligence, and gross negligence,[1] AlNahhas and his wife sued Bosch, Skil Tools, and CPO Commerce, Inc., alleging the sander was defectively designed and had inadequate warnings. Before the Court is Bosch's Motion for Summary Judgment [Doc. No. 37] to which Plaintiffs have responded [Doc. No. 42]. The matter is fully briefed and at issue.

---

[1] Plaintiffs have stipulated there is no cause of action for gross negligence. Resp. to Mot. for Summary Judgment at 15. Accordingly, this Order does not address the underlying merits of that claim.

## BACKGROUND

AlNahhas began woodworking over twenty-five years ago, teaching himself the craft. In 2007 or 2008, he purchased a new Skil Orbital Sander, Model No. 7490. The sander is a hand-held power tool that includes an electrically powered rotating disc and detachable sanding pad. The sanding pad is made with a reinforced glass-filled center structure surrounded by foam. To use the sander, a user attaches sandpaper to the foam portion of the disc, which then rotates at approximately 12,000 oscillations per minute. The sanding pad deteriorates with use, for which Bosch sells replacement pads.[2]

The sander purchased by AlNahhas was manufactured in November 2006. Affixed to the sander is the following warning:



---

[2]AlNahhas testified he "never buy[s] replacement parts" for tools; instead, he "throw[s] them away if they go out." Depo. of Hanna AlNahhas at 42:4-10.

The sander's instruction manual also contained operational and safety directions. It read in pertinent part:

> **Read and understand all instructions**. Failure to follow all instructions listed below, may result in electric shock, fire and/or serious personal injury.
>
> * * *
>
> Stay alert, watch what you are doing and use common sense when operating a power tool. Do not use tool while tired or under the influence of drugs, alcohol, or medication. A moment of inattention while operating power tools may result in serious personal injury.
>
> * * *
>
> **Use safety equipment. Always wear eye protection**. Dust mask, non-skid safety shoes, hard hat, or hearing protection must be used for appropriate conditions.
>
> * * *
>
> **Check for misalignment or binding of moving parts, breakage of parts, and any other condition that may affect the tools [sic] operation. If damaged, have the tool serviced before using.** Many accidents are caused by poorly maintained tools. Develop a periodic maintenance schedule for your tool.

(Emphasis in original). AlNahhas read the manual prior to using the sander.

AlNahhas used the sander to build cabinets for his kitchen and other jobs. When not in use, the sander was stored on a shelf in his woodworking shop. The accident giving rise to this lawsuit occurred on April 22, 2012, when AlNahhas was preparing to replace the fascia board on his home. While testing the sander to see if it was still functional, a fragment of the sanding disc/pad splintered off and struck him in his eye. AlNahhas described the incident as follows:

-3-

> [T]he intent was to finalize the corners and nail holes on the fascia board that following Monday. So I went to the shop after finishing with the lawn to see if I had the sanding paper for the sander. And unfortunately I found the wrapper for the sanding paper, but there was no sanding paper. So I picked up the sander from the shelf, because there's two different kinds of sanding paper for it based on the size and number of ventilation holes that's in the disc itself. And I put it on the table saw in the center of the shop, took a measuring tape, measured the width of the disc. Counted the holes. And then set it on the table saw. And that's when – I haven't used it in a while. That's when I decided to plug it in and make sure it was working. I looked at the dust collector and it was clean. I pulled it off, looked at it and put it back in. And then I walked up to the power plug, which is right by the door, plugged it in. Held it in my left hand. And I pushed the power button. And within, I don't know, a couple of seconds, I felt being hit in the face with it.

Depo. of Hanna AlNahhas at 51:22-25 – 52:1-21. AlNahhas testified that when he turned the sander on, he held it "at an angle" instead of facing down. Although he normally wore safety glasses when using the sander, AlNahhas testified he did not wear them on this occasion since he was merely testing the tool to see if it was operational. Prior to the accident, AlNahhas experienced no trouble with the sander.

AlNahhas' designated expert, Robert N. Anderson, Ph.D., provided a report stating his belief as to the cause of the accident. It stated in pertinent part:

> In my opinion, the presence of voids and the mixture of brittle and plastic regions made the sanding disc too weak for the intended use. Further, there is no warning that the sanding disc can fracture after extended use. The manufacturer's molding process was the cause of the failure, and this made the disc unreasonably dangerous. Bosch did a number of tests on the orbital sander, but did not specify or warn as to end-of-life behavior of the disc. Without providing documentation or warnings on how the disc might fail, Bosch should not have sold these

discs. It is reasonable to expect that without initially putting on safety glasses, a user might test the functioning of the orbital sander before starting work. Therefore, knowledge of the stability of the disc during its lifetime is critical. The manufacturing defects and the lack of warnings with regard to the end-of-life behavior resulted in a dangerous condition that caused the injury to Mr. AlNahhas.

At his deposition, Dr. Anderson testified he believed the sanding pad was initially suited for its intended purpose, but failed to maintain its integrity over usage and time:

> Q: So what caused the failure in this case?
>
> A: The fact that it had lost some of its strength during the previous times that it had been rotated.
>
> * * *
>
> Q: Was this product, when it left the manufacturer, an appropriate sanding pad for the use?
>
> A: Evidently, initially, it was.
>
> Q: And then it's your opinion that, what, it wore out over time or?
>
> A: The fact that you have a composite material, two different materials responding different, they tore each other apart.
>
> * * *
>
> Q: So just because this pad wore out eventually, that doesn't make it defective when it was manufactured, does it, or designed?
>
> A: Doesn't it? If you have it capable of failing ballistically – that if you have designed something that's going to be in a moving situation and after a period of time, it can ballistically fail – by that I mean parts can be thrown off – that may be a bad design.

> Q: The tires on your car, if you drive them until they are bald, will they ballistically fail?
>
> A: Sure.
>
> Q: Is that a bad design?
>
> A: Yeah.
>
> Q: So is the way that you determine that this pad is unacceptable is that it fails; that it failed ballistically?
>
> A: Absolutely. I want it to fail benignly. Just sort of lay down and give up.

Depo. of Robert Anderson at 52:23-25; 66:12-25; 67:15-24.

Thomas Siwek, Bosch's Senior Director of Product Safety and Engineering Shared Services, examined the sander and concluded that (1) the sander was damaged due to operator misuse and (2) AlNahhas' injury was due to his failure to follow the accompanying safety instructions:

> It is my opinion . . . that prior to the day of the accident, the sander was misused and abused as a result of the application of excessive downward pressure during sanding . . . .When [Plaintiff] went to turn-on the sander, there were two primary conditions that when combined, led to the accident:
>
> 1. <u>Damage to the Friction Ring and Sanding Pad</u> - With the damaged friction ring, the pad has no restraint when it is operating at no-load (not in contact in the work). This "freewheeling" operation caused an over-speed condition that likely caused stresses to the pad that are not normally seen when the friction ring is intact. Due to wear down to the plastic substructure, it is highly likely that the sanding pad was damaged and it[s] structure weakened. This

> coupled with the damaged friction ring lead to a condition where when the tool was energized, the weakened sanding pad was overstressed by a damaged machine causing the sanding pad to fracture.
>
> 2. <u>Failure to use Eye Protection</u> - When the sanding pad was overstressed and fractured, [Plaintiff] was exposed to a greater risk of injury as a result of his failure to follow the operating warnings/instructions and wear protective eyewear. . . . It is my opinion that the average user would consider the act of simply energizing a power tool to constitute "operation, or at least intent to operate.

## STANDARD OF DECISION

"Summary judgment is proper if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Bonidy v. U.S. Postal Service*, 790 F.3d 1121, 1124 (10th Cir. 2015) (citing *Peterson v. Martinez*, 707 F.3d 1197, 1207 (10th Cir. 2013)). A movant may establish that a fact cannot be genuinely disputed by citing to particular parts of depositions, documents, electronically stored information, affidavits, declarations, stipulations, discovery responses, or other materials. Fed. R. Civ. P. 56(c)(1)(A).

The Court does not weigh the evidence and make findings of fact on a motion for summary judgment. The Court only determines whether there is a genuine dispute concerning a material fact. *Jones v. Barnhart*, 349 F.3d 1260, 1265 (10th Cir. 2003). An issue is "genuine" if there is sufficient evidence on each side so that a rational trier

of fact could resolve the issue either way. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). An issue of fact is "material" if under the substantive law it is essential to the proper disposition of the claim. *Id*. Once the moving party has met its burden, the burden shifts to the nonmoving party to present sufficient evidence in specific, factual form to establish a genuine factual dispute. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).

The nonmoving party may not rest upon the mere allegations or denials of its pleadings. Rather, it must go beyond the pleadings and establish, through admissible evidence, that there is a genuine issue of material fact that must be resolved by the trier of fact. *Salehpoor v. Shahinpoor*, 358 F.3d 782, 786 (10th Cir. 2004). Unsupported conclusory allegations do not create an issue of fact. *Finstuen v. Crutcher*, 496 F.3d 1139, 1144 (10th Cir. 2007).

## DISCUSSION

Because removal of this case was predicated upon diversity jurisdiction, Oklahoma law governs Plaintiff's claims. *McPhail v. Deere & Co.*, 529 F.3d 947, 957 (10th Cir. 2008) ("Because jurisdiction is based on diversity, we apply the law of the forum state, in this case the Oklahoma law of products liability.").

## I. STRICT PRODUCTS LIABILITY

In order to prevail on his products liability claim, AlNahhas must show: (1) a defect existed in the product at the time it left the manufacturer or seller's control; (2) the defect made the product unreasonably dangerous; and (3) the defect in the product was the cause of the injury. *McPhail v. Deere & Co.*, 529 F.3d 947, 957 (10th Cir. 2008) (applying Oklahoma law, citing *McMurray v. Deere & Co., Inc.*, 858 F.2d 1436, 1439 (10th Cir. 1988)); *Kirkland v. Gen. Motors Corp.*, 1974 OK 52, ¶¶ 29-31, 521 P.2d 1353, 1363. "Under Oklahoma law, the test for whether a product is unreasonably dangerous is whether the product is 'dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.'" *McPhail*, 529 F.3d at 957 (quoting *McMurray*, 858 F.2d at 1436). Whether a product is more dangerous than would be expected by the ordinary consumer is an objective test. *Cox v. Ohio Mfg. Co.*, 732 F. Supp. 1555, 1560 (W.D. Okla. 1987).[3]

"It is not enough to merely contend that a defect existed, show that an accident occurred, and assume the two are necessarily related." *Beverly v. Wal-Mart Stores, Inc.*, 2000 OK CIV APP 45, ¶ 15, 3 P.3d 163, 167 (internal quotations and citations

---

[3] Evidence that a product could be made "safer" does not establish that it was less safe than would be expected by the ordinary consumer. *Woods v. Fruehauf*, 1988 OK 105, ¶ 17, 765 P.2d 770, 775.

omitted). "[I]njury, of itself, is not proof of a defect and raises no presumption of defectiveness." *Gates v. Ford Motor Co.*, 494 F.2d 458, 459 (10th Cir.1974) (citation omitted). Instead, in order to survive summary judgment, a plaintiff must provide sufficient evidentiary material which raises a reasonable inference from which the fact finder may rationally conclude the plaintiff's injuries "proximately resulted from the product's failure of performance causally related to its defective condition." *Smith v. Sears Roebuck and Co.*, No. CIV-04-1271-HE, 2006 WL 687151, at *5 (W.D. Okla. Mar. 17, 2006) (citing *Kaye v. Ronson Consumer Prods. Corp.*, 1996 OK CIV APP 57, 921 P.2d 1300, 1302).

It therefore follows that "[t]he burden on the plaintiff in a products liability action is 'a large and heavy one . . . . for he must prove that his injury has been caused not necessarily by the negligence of the Defendant but by reason of a defect 'built in' and existing at the time of injury.'" *Prince v. B.F. Ascher Co., Inc.*, 2004 OK CIV APP 39, ¶ 12, 90 P.3d 1020, 1026.

### A. *Defective Design*

Having carefully reviewed the record, the Court concludes that Plaintiffs have failed to present sufficient evidence for a jury to conclude that the sander was unreasonably dangerous. As reflected in Dr. Anderson's deposition testimony, Plaintiffs do not contend the sander was defective *per se* when it left the manufacturer,

but that it was not sufficiently designed to withstand repeated use over time. As also noted, Dr. Anderson testified the sander failed because "it had lost some of its strength during the previous times that it had been rotated." Anderson Depo. at 52:23-25. Dr. Anderson also noted he saw evidence of "a lot of use" and the sander "ha[d] been used quite a bit." *Id*. at 58:8-10.

The fact that the sanding pad eventually wore down over time and repeated use is antithetical to a products liability claim. Bosch is not obligated to make a fail-safe product. *See Cox v. Murray Ohio Mfg. Co.*, 732 F.Supp. 1555, 1561 (W.D. Okla. 1987) ("Unfortunately, in today's marketplace, one cannot expect the components of a mower, an appliance, a car or other machinery to last for many years. For this reason, [defendant] provided an extensive list of replacement parts and distributors in the Owner's Handbook. The fact that a guard on the mower may have failed sooner than the plaintiff would have liked does not make the product less safe than expected by the ordinary consumer."); *Stuckey v. Young Exploration Co.*, 1978 OK 128, ¶ 21, 586 P.2d 726, 731 ("A manufacturer does not undertake to provide a product that will never wear out, particularly if used in a continually abnormal manner. The doctrine of manufacturers' products liability cannot be said to require a manufacturer to build a fail-safe product.").

In sum, Plaintiffs have failed to present sufficient evidence to raise a triable issue of fact as to whether the sander was dangerous beyond the extent contemplated by an ordinary consumer; consequently, the Court concludes that as a matter of law, Plaintiffs cannot establish either the existence of a defect or that the sander was "unreasonably dangerous," and Bosch is thus entitled to summary judgment on this issue.

### B. *Inadequate Warning*

Plaintiffs also contend the sander was defective due to the absence of adequate warnings. Under Oklahoma law, "the failure to adequately warn of a known potential risk renders a product defective, however, the plaintiff must establish that the failure to warn caused the injury." *Daniel v. Ben E. Keith Co.*, 97 F.3d 1329, 1332 (10th Cir.1996) (internal citations omitted)."[E]ven where a product's design defect makes the product unreasonably dangerous, Oklahoma law does not impose liability if the product contains a warning that adequately addresses the known risks of use." *McPhail*, 529 F.3d at 958 (citing *Smith v. U.S. Gypsum Co.*, 1980 OK 33, 612 P.2d 251, 253-54). In *McPhail*, the Tenth Circuit Court of Appeals recited the following standard as to warnings:

> If a product is potentially dangerous to consumers, a manufacturer is required to give directions or warnings . . . as to its use. If these warnings cover all foreseeable use and if the product is not unreasonably dangerous if the warnings and directions are followed, the product is not

> defective in this respect. If the warnings are unclear or inadequate to apprise the consumer of the inherent or latent danger, the product may be defective; particularly where a manufacturer has reason to anticipate danger may result from the use of his product and the product fails to contain adequate warning of such danger, the product is sold in a defective condition.

*Id*. (quoting *Smith*, 612 P.2d at 253-54). "Oklahoma law does not require a manufacturer 'to foresee that [professionals who use its product will] fail to read its warnings, and then use [the product] in a manner that manufacturer's instructions expressly warned against.'" *Id*. (quoting *Hutchins v. Silicone Specialties, Inc*., 1993 OK 70, 881 P.2d 64, 67 (paraphrasing in original)). Finally, "there is no duty to warn a knowledgeable user of the product of the dangers associated therewith." *McPhail*, 529 F.3d at 958 (quoting *Duane v. Oklahoma Gas & Elec. Co.*, 1992 OK 97, 833 P.2d 284, 286); *Ahrens v. Ford Motor Co.*, 340 F.3d 1142, 1146 (10th Cir. 2003) ("Oklahoma does not recognize a duty to warn of dangers that are obvious.").[4]

The presence of the aforementioned warning label requires Plaintiffs to prove the warning was "unclear or inadequate to apprise the consumer of the inherent or latent danger." *McPhail*, 529 F.3d at 959 (citation omitted). On this issue, the Court finds persuasive the decision in *Previto v. Ryobi N. Am., Inc*., No. 08cv177, 2011 WL

---

[4] Oklahoma law recognizes a rebuttable presumption that a party would have read and heeded an adequate warning. *Daniel*, 97 F.3d at 1332. The Court need not reach this issue here, as it finds Bosch has shown its warnings adequately informed AlNahhas of the inherent dangers of operating the sander.

135673 (S.D. Miss. Jan. 14, 2011). In *Previto*, the plaintiff was injured when the carbide tip of a power table saw he was using separated from the saw and struck him in his eye. As here, the plaintiff advanced claims of negligence and strict products liability, alleging that the defendants manufactured and distributed a defective blade and, *inter alia*, provided inadequate warnings. Of particular relevance here, the court *rejected* the plaintiff's argument that the warnings were inadequate because they "did not alert users to the *specific hazard involved*, namely that a carbide tip could come off the blade during operation, but instead only instructed that the hazard could be avoided by wearing safety goggles." *Privito*, 2011 WL 135673 at *6 (emphasis added). Rather, the district court granted summary judgment on the inadequate warning claim, noting the saw and its accompanying manual both contained specific warnings about the need to wear proper eye protection. *Id*. at *6.[5]

---

[5]In *Privito*, the table saw's manual contained a warning depicting a user wearing protective goggles and stating:
> **! WARNING**:
> The operation of any power tool can result in foreign objects being thrown into your eyes, which can result in severe eye damage. Before beginning tool operation, always wear safety goggles or safety glasses with side shields and a full face shield when needed. We recommend Wide Vision Safety Mask for use over eyeglasses or standard safety glasses with side shields. Always wear eye protection which is marked to comply with ANSI Z87.1.

In another location, the manual advised the user should "ALWAYS WEAR SAFETY GLASSES WITH SIDE SHIELDS. Everyday eyeglasses have only impact resistant
(continued...)

Similarly, in *Tripolone v. Genova Products, Inc.*, No. 95-cv-1018, 1997 WL 583120 (N.D.N.Y. Sept. 3, 1997), the plaintiff was preparing to fasten a toilet to a flange manufactured by the defendant. The flange contained a center plug which required removal before being fastened to the toilet. The plaintiff was not wearing eye protection. To remove the knockout plug, the plaintiff cut around the groove surrounding the plug with a utility knife. He then inserted a screwdriver into the groove, and pried up, using the screwdriver as a lever to force the plug out. The plug shattered, sending shards of plastic into his eye.

In raised letters on the side of the plug was the warning "GENOVA POP TOP CLOSET FLANGE, KNOCKOUT BEFORE INSTALLING CLOSET, **WEAR EYE PROTECTION**." *Id.* at *1 (bold added). Plaintiff contended that the "WEAR EYE PROTECTION" warning was "inadequate in light of the risk of injury, and that it failed to adequately apprise the installers ... of the risks of serious eye injuries associated with pop-top removal." *Tripolone*, 1997 WL 583120, at *4. After citing a

---

⁵(...continued)
lenses; they are NOT safety glasses." The saw itself had a warning sticker adjacent to the power switch that stated:
**! WARNING**
• To reduce the risk of injury, user must read and understand operator's manual.
• Wear eye protection.

*Previto*, 2011 WL 135673, at **6-7 (emphasis in original).

string of state court decisions, the district court found the general warning adequately apprised the user of the dangers associated with installing the flange:

> These cases all involve relatively simple, straightforward warnings correlating to implicit but unexpressed dangers. For instance in *Broadie* the jack labels instructed the user not to climb under the vehicle when it was elevated by the jack. The labels did not expressly state that such precaution would prevent the hazard of the jack slipping and the car falling, but such information will necessarily be deduced by even the dullest user. In *Ruggles* the warning on the product advised the user never to climb a damaged ladder. The warning need not have explained that failure to heed the precaution could lead to the collapse of the ladder and injury therefrom.
>
> The warning "WEAR EYE PROTECTION" is similarly unambiguous and sufficient to warn of the dangers of PVC debris. Did the flange plug have to warn the user to "WEAR EYE PROTECTION TO PREVENT EYE INJURY FROM PLUG REMOVAL," for instance, in order to discharge the duty to warn? This court thinks not[.]

*Id*. Likewise, the Court finds the sander's general caution to "always wear eye protection" and other warnings were unambiguous and adequately advised AlNahhas of the danger of the very injury of which he now complains. *Privito*, 2011 WL 135673 at *6. AlNahhas was placed on notice of the importance of wearing eye protection to prevent foreign debris from entering his eyes, and as evidenced by his past experience and admitted prior use of such eye protection when operating the sander, he was keenly aware of such danger occurring. The warnings cautioned AlNahhas to always wear eye protection and to use common sense in operating the tool. He was also advised of the importance of tool maintenance and to check for (and replace) any

broken machinery/parts, which he testified he had no intention of doing. The warnings were simple, straightforward, and correlated to implicit but unexpressed dangers; they need not have warned a user to always ear eye protection to prevent injury from the *specific* occurrence of a broken sanding disc. Therefore, based on the record before it, the Court finds Plaintiffs have failed to present sufficient evidence that would lead a reasonable trier of fact to believe the sander's warnings were inadequate.

In addition, AlNahhas has not presented any sufficient evidence indicating that he would have heeded and followed a more adequate warning. Even assuming the sander included some warning about "end-of-life" usage, as Dr. Anderson advises, AlNahhas' own testimony reveals he would not have followed it since, in his view, he was not "using" the sander when the accident occurred. In this regard, the Court finds no merit or distinction in AlNahhas' argument that he was not "using" the sander, since both actions ("testing" and "using") require the device to be turned on and carried the inherent danger of debris being thrown into his eyes, an occurrence of which the sander and manual both adequately warned him.

In sum, the Court concludes the warnings on the sander and those found in the manual were adequate and Plaintiffs have failed to present sufficient evidence for a jury to conclude that the alleged inadequate warnings caused the injury at issue. Accordingly, Bosch is entitled to summary judgment on this issue as well.

## II. NEGLIGENCE

Under Oklahoma law, a negligence cause of action requires proof of (1) existence of a duty on the part of the defendant to protect plaintiff from injury; (2) defendant's breach of the duty; and (3) injury to plaintiff proximately resulting therefrom. *Scott v. Archon Group, L.P.*, 2008 OK 45, ¶ 17, 191 P.3d 1207, 1211. Although Bosch clearly had a duty to protect AlNahhas from injury, the Court finds there is insufficient evidence from which to support the finding that Bosch had breached such duty. Accordingly, summary judgment is granted to Bosch on Plaintiffs' negligence claim.

## CONCLUSION

Defendant's Motion for Summary Judgment [Doc. No. 37] is **GRANTED** as set forth herein. Judgment shall be entered accordingly.[6] Bosch's Motion to Exclude Expert Testimony of Plaintiffs' Expert Dr. Robert Anderson [Doc. No. 38] and its Motion to Strike Affidavit of Robert N. Anderson [Doc. No. 43] are hereby **STRICKEN** as moot.

---

[6] Defendant CPO Commerce was dismissed from this action for lack of service [Doc. No. 10]. Bosch contends Defendant Skil Tools should be dismissed because it is merely a brand name and not a separate entity. Although Plaintiffs do not necessarily dispute this contention, the Court need not address it in light of its grant of summary judgment on all remaining claims.

**IT IS SO ORDERED** this 4th day of May, 2016.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE