IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| HANNA ALNAHHAS and<br>BARBARA ALNAHHAS, | )<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| v. | )<br>) | Case No. CIV-13-178-D |
| ROBERT BOSCH TOOL<br>CORPORATION, | )<br>)<br>)<br>) | |
| Defendant. | ) | |

## ORDER

Before the Court is Defendant Robert Bosch Tool Corporation's Motion to Exclude the Expert Testimony of Plaintiff's Expert, Dr. Robert Anderson [Doc. No. 63]. Plaintiffs have filed their response in opposition [Doc. No. 69] and Defendant has replied [Doc. No. 74]. The matter is fully briefed and at issue.

## BACKGROUND

Plaintiff, Hanna AlNahhas ("Plaintiff"), was injured while operating a random orbit sander manufactured by Defendant. Under tort theories of strict products liability and negligence, Plaintiffs sued Defendant alleging the sander was defectively designed and had inadequate warnings.[1] In support of the claims,

---

[1] The Court previously granted Defendant's Motion for Summary Judgment, finding that the sander's warnings were adequate and Plaintiff had failed to establish either the existence of a defect or that the sander was unreasonably dangerous. On appeal, the Tenth Circuit concluded genuine disputes of material fact existed on both claims

Plaintiffs retained the services of Dr. Robert Anderson. Dr. Anderson is president of RNA Consulting, Inc., where he specializes in forensic engineering. His areas of expertise include metallurgical failure analysis, corrosion, thermodynamics, engineering design failure, electrical fires, ballistics, and accident analysis. Dr. Anderson described his occupation thusly:

> I do failure analysis, and a component of that is to look at what would have prevented that failure, whether it was changing some compositional area, reinforcing area or warnings, and so just about every issue I address, there [is] some concept in there about what could have stopped the injury from occurring.

Depo. of Robert Anderson at 36:14-19.

Dr. Anderson received his Ph.D in Metallurgy from Stanford University and his bachelor and master of science degrees in Chemical Engineering from the University of California, Berkley. At the time of his report, he was an emeritus professor at California State University at San Jose. Among other licenses, he is a registered metallurgical engineer and is certified in the specialty of forensic engineering. He takes classes every year on product failure and has authored several publications regarding forensic engineering.

At Plaintiffs' request, Dr. Anderson examined the sanding disc at issue with a stereo microscope and scanning electron microscope. He did not test any other pad,

---

and remanded the case for further proceedings. *See AlNahhas v. Robert Bosch Tool Corp.*, 706 F. App'x 920 (10th Cir. 2017) (unpublished).

but did examine an exemplar pad similar to the one used by Plaintiff. Dr. Anderson testified that in addition to examining the sander, he reviewed Plaintiff's discovery requests and Defendant's answers to Plaintiff's Requests for Admission. He also reviewed drawings produced by Defendant during discovery, as well as literature on the sander and the operating manual.

After examining the pad, he issued a written report (the Anderson Report) detailing his findings and conclusions. The report consisted of two general opinions: (1) Defendant did not specify or warn as to the end of life behavior of the sanding disc and should not have sold the disc without such warning, and (2) there was a design defect in the molding process, which made the disc unreasonably dangerous and caused it to lose its "strength" over time. Specifically, Dr. Anderson's report stated:

> In my opinion, the presence of voids and the mixture of brittle and plastic regions made the sanding disc too weak for the intended use. Further, there is no warning that the sanding disc can fracture after extended use.
>
> The manufacturer's molding process was the cause of the failure, and this made the disc unreasonably dangerous. [Defendant] did a number of tests on the orbital sander, but did not specify or warn as to end-of-life behavior of the disc. Without providing documentation or warnings on how the disc might fail, [Defendant] should not have sold these discs.
>
> It is reasonable to expect that without initially putting on safety glasses, a user might test the functioning of the orbital sander before starting work. Therefore, knowledge of the stability of the disc during its lifetime is critical.

3

> The manufacturing defects and the lack of warnings with regard to the end-of-life behavior resulted in a dangerous condition that caused the injury to [Plaintiff].

Anderson Report at 2.

At his deposition, Dr. Anderson was asked to elaborate on his opinion regarding the disc's design, wherein he testified "[t]he fact that [the sanding disc] is actually composite made of brittle hard material in conjunction with soft foamy material and the behavior that occurs when you have two mismatched materials … that would give a better explanation, a more complete explanation of the failure, the cause." Anderson Depo. at 9:10-17. He opined that the tool's warning should have indicated that the disc may fail, that such failure would be in a "dynamic manner," that the user may be struck by some part of the disc, and that eye protection should be worn at all times.

Defendant contends Dr. Anderson should be excluded as a witness because (1) he is unqualified to give the opinions at issue, (2) his opinions are not reliable or relevant, and (3) he did not rely on any articulable scientific methods or principles in reaching either opinion regarding design or warning defect. In response, Plaintiff contends that Dr. Anderson is well qualified to testify on the subjects in his report, his opinions are relevant, and the opinions will assist the trier of fact.

## STANDARD OF DECISION

Courts have broad discretion in determining the admissibility of expert testimony. *Taylor v. Cooper Tire & Rubber Co*., 130 F.3d 1395, 1397 (10th Cir. 1997); *see also Abraham v. WPX Production Prods., LLC*, 184 F. Supp. 3d 1150, 1187 (D.N.M. 2016) ("Courts should, under the Federal Rules of Evidence, liberally admit expert testimony….") (citing *United States v. Gomez*, 67 F.3d 1515, 1526 (10th Cir. 1995)). A district court also has broad discretion to decide "how to assess an expert's reliability, including what procedures to utilize in making that assessment, as well as in making the ultimate determination of reliability." *Etherton v. Owners Ins. Co*., 829 F.3d 1209, 1216 (10th Cir. 2016) (quoting *Goebel v. Denver & Rio Grande W. R.R. Co*., 346 F.3d 987, 990 (10th Cir. 2003)). "As the Supreme Court said in [*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999)], '[t]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.'" *Id*. (quoting *Kumho Tire*, 526 U.S. at 152).

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's opinions in *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993) and *Kumho Tire, supra*. *See James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1215 n. 1 (10th Cir. 2011) ("If expert testimony is not reliable under *Daubert/Kumho*, it is not admissible under Rule

5

702."). Rule 702 imposes upon the trial judge an important "gate-keeping" function with regard to the admissibility of expert opinions. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In considering whether a putative expert's opinion is admissible, the Court performs a two-step analysis. First, the court determines whether the expert is qualified by knowledge, skill, experience, training or education to render the opinion that the would-be expert offers. Second, if the expert is so qualified, the Court must decide whether the expert's opinion is reliable under the principles set forth in *Daubert* and *Kumho Tire* and would assist the fact finder. *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006); *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001).[2]

---

[2] In assessing the reliability of scientific or other specialized evidence, the *Daubert* Court enumerated four "non-exclusive" factors: (1) whether the expert's technique or theory can be and has been tested; (2) whether the theory has been subject to peer review and publication; (3) whether the method has a high known or potential rate of error of the technique or theory when applied and if there are standards and controls controlling the method's operation; and (4) whether the method is generally accepted in a relevant scientific community. *Kumho Tire*, 526 U.S. at 149-50.

6

"The *Daubert* factors are 'meant to be helpful, not definitive,' and not all of the factors will be pertinent in every case." *United States v. Baines*, 573 F.3d 979, 992 (10th Cir. 2009) (quoting *Kumho Tire*, 526 U.S. at 150-51). Thus, in nonscientific cases, the *Daubert* factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire*, 526 U.S. at 150. The inquiry is always, and of necessity, highly fact-specific, and no one factor, even when applicable, is outcome-determinative. Accordingly, "the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Id*. at 142 (citing *General Electric Co. v. Joiner*, 522 U.S. 136, 143 (1997)).

## DISCUSSION

Based on the evidence in the record, the Court finds a formal hearing on Defendant's motion is unnecessary. "Tenth Circuit cases have interpreted *Kumho Tire's* directive that courts must have leeway in applying the *Daubert* framework to mean that although *Daubert* hearings are the most common way to fulfill the gatekeeper function, 'such a process is not specifically mandated.'" *United States v. Nacchio*, 555 F.3d 1234, 1253-54 (10th Cir. 2009) (citations omitted); *United States v. Charley*, 189 F.3d 1251, 1266 (10th Cir. 1999) ("The trial judge is granted great latitude in deciding which factors to use in evaluating the reliability of expert

testimony, and in deciding whether to hold a formal hearing.") (citation omitted). Accordingly, the Court will rule on Defendant's motion based on the parties' submissions. *See also Ho v. Michelin N. Am., Inc.*, 520 F. App'x 658, 664 (10th Cir. 2013) (unpublished) (court properly exercised its discretion in issuing *Daubert* ruling without formal hearing due to number of expert reports, deposition transcripts, and other evidence that accompanied the parties' arguments).

**I.     Qualification**

Pursuant to the foregoing standard, the Court finds that although Dr. Anderson is qualified to testify about an alleged design defect in the sanding disc at issue, this expertise does not qualify him as an expert as to warnings. It is undisputed that Dr. Anderson has never designed a warning for a product, power tool, or a sanding pad. *See* Anderson Depo. at 34:5-25 (Q: Have you ever been involved in developing a warning for a product? A: No, I don't believe I have ... Q: Do you have any experience or training in developing a warning for a power tool? A: No. Q: Do you have any experience or training in developing a warning for a sanding pad? A: No. … Q: Do you have any experience or training in developing a warning for a foam product? A: Other than my reading, no.). He has had no experience or training in developing a warning for a power tool or sanding pad. *Id*. at 34:20-25. Nor has he conducted research on, or published any work regarding product warnings. *Id*. at 43:16-25—44:1-9.

Although Dr. Anderson testified that he had taken classes on developing warnings and read a "number of books" on the subject matter, the fact he may have some marginal familiarity with developing product warnings is a far cry from classifying him as an "expert" on the issue. Under *Daubert* and Rule 702, "the touchstone of the admissibility of expert testimony is its helpfulness to the trier of fact." *U.S. Aviation Underwriters, Inc. v. Pilatus Business Aircraft, Ltd.*, 582 F.3d 1131, 1150 (10th Cir. 2009) (citation omitted). Stated another way, "[t]he issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Graves v. Mazda Motor Corp.*, 675 F. Supp. 2d 1082, 1092-93 (W.D. Okla. 2009) (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir.1994), *cert. denied*, 513 U.S. 1111 (1995)). "Thus, on the issue of expert qualifications, *Ralston* and like cases establish that the qualifications of the proposed expert are to be assessed only after the specific matters he proposes to address have been identified. The controlling Tenth Circuit cases, exemplified by *Ralston*, establish that the expert's qualifications must be both (i) adequate in a general, qualitative sense … and (ii) specific to the matters he proposes to address as an expert." *See id.* at 1093 (citations omitted).

Dr. Anderson's stated expertise is in forensic/metallurgical engineering. In the Court's view, the adequacy of the warning regarding the sanding disc is not within

9

the reasonable confines of Dr. Anderson's subject area of expertise and his proposed testimony should be curtailed in this regard. *Compare American Auto. Ins. Co. v. Omega Flex, Inc.*, No. 4:11CV00305, 2013 WL 2628658, at *6 (E.D. Mo. June 11, 2013) (precluding opinion testimony on adequacy of warnings in product liability case where expert's stated specialty was metallurgy and physics).

Moreover, the ultimate issue of whether the sander's warning labels were adequate is a matter within a jury's common sense and everyday knowledge, which would not require or benefit from expert assistance. *See Robertson v. Norton Co.*, 148 F.3d 905, 908 (8th Cir. 1998) (questions surrounding adequacy of warning on sander/grinder wheel was ultimate issue of fact for the jury); *Roman v. Sprint Nextel Corp.*, No. 12-CV-276, 2014 WL 5870743, at *2 (S.D.N.Y. Nov. 13, 2014) ("Because the jury steps into the shoes of the average user, it does not need expert testimony to evaluate a warning; the ultimate issue of the adequacy of a warning is a question of fact for the jury based on the totality of the circumstances.") (citing *Billar v. Minn. Mining & Mfg. Co.*, 623 F.2d 240, 247 (2d Cir. 1980)). The jury will have an opportunity to view the warnings themselves, and the Court is convinced that the jury is competent to decide whether the warning labels were adequate under the circumstances. Although experts may generally aid a jury by rendering opinions on ultimate issues, *see* Fed. R. Evid. 704, courts must guard against invading the

province of the jury on a question which the jury was entirely capable of answering without the benefit of expert testimony.

However, the Court finds Dr. Anderson is qualified to render an opinion regarding the sanding pad's design. On this issue, Defendant attacks Dr. Anderson's qualifications on the grounds he has neither designed a power tool nor has experience designing sanding pads or foam products and did not consult other manufacturers' designs for sanding pads. However, a court enjoys broad discretion in determining whether an expert is qualified and "[a] court abuses its discretion if it refuses to qualify a witness as an expert solely because the expert does not have the degree or specialization that the court considers to be most appropriate." *United States v. McCluskey*, 954 F. Supp. 2d 1224, 1241 (D.N.M. 2013) (citing *Pages-Ramirez v. Ramirez-Gonzalez*, 605 F.3d 109, 114 (1st Cir. 2010)). The text of Rule 702 expressly contemplates that an expert may be qualified on the basis of "knowledge, skill, experience, training, or education …." Fed. R. Evid. 702. Any one of these bases is sufficient. As noted above, Dr. Anderson has significant expertise in forensic engineering and metallurgical design, including but not limited to, design failure and accident analysis. The accumulation of this training and experience, in the Court's view, renders him capable of testifying on the product's design.

Defendant's arguments against Dr. Anderson on this issue go to the weight of his testimony, not its admissibility. "As long as an expert stays 'within the

reasonable confines of his subject area,' [Tenth Circuit] case law establishes 'a lack of specialization does not affect the admissibility of [the expert] opinion, but only its weight.'" *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001) (quoting *Compton v. Subaru of Am., Inc.*, 82 F.3d 1513, 1519-20 (10th Cir. 1996)). "*Daubert* did not work a 'seachange over federal evidence law,' and 'the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.'" Fed. R. Evid. 702, advisory committee's note to 2000 amendment. Only when "an expert opinion is so fundamentally unsupported that it can offer no assistance to the jury" must such testimony be excluded. *Hose v. Chicago Northwestern Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1995). Thus, rejection of expert testimony is the exception rather than the rule, and vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence. *Daubert*, 509 U.S. at 595. Accordingly, Defendant's motion on this issue is denied.

## II. Methodology and Reliability[3]

In order to establish an expert's testimony as reliable, the proponent need not prove the expert is indisputably correct; rather, the party must show the method

---

[3] Having found Dr. Anderson may not testify as to the adequacy of warnings, Defendant's argument regarding the reliability of his opinion on that issue is considered moot.

employed by the expert in reaching his conclusion is sound and the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements. *Reed v. Smith & Nephew, Inc.*, 527 F. Supp. 2d 1336, 1346 (W.D. Okla. 2007). In other words, if there are "good grounds" for the expert's conclusion, it should be admitted. *Daubert*, 509 U.S. at 590; *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999); *Bonner v. ISP Technologies, Inc.*, 259 F.3d 924, 929 (8th Cir. 2001) ("[E]ven if the judge believes there are better grounds for some alternative conclusion, and that there are some flaws in the [expert's] methods, if there are good grounds for the expert's conclusion, it should be admitted.").

Defendant contends Dr. Anderson's opinion about the sander's alleged design defects[4] should be excluded as unreliable because he: (1) was unfamiliar with the sander's design, (2) did not have information on the design process, (3) had no information as to how Plaintiff used the sander, (4) did not take photos of multiple discs, (5) collected no supporting data, and (6) conducted no tests on exemplar pads. Upon review, the Court finds Defendant's criticisms of Dr. Anderson's methodology are more appropriately directed at the weight of his testimony as opposed to its admissibility. As noted, the Court enjoys broad discretion in deciding how to assess an expert's reliability, including what procedures to utilize in making that

---

[4] The parties agree that Dr. Anderson does not intend to present any opinion as to whether there was a manufacturing defect.

assessment, as well as in making the ultimate determination of reliability. Here, the Court is unable to conclude that Dr. Anderson's methodology is so lacking in fundamental principles of ballistic engineering as to render it unreliable and irrelevant. Although there are arguably flaws in Dr. Anderson's method, sufficient grounds exist for his conclusion and it should be admitted.

In this regard, courts have cautioned against applying the reliability requirement too strictly, explaining that "the reliability requirement must not be used as a tool by which the court excludes all questionably reliable evidence." *Voilas v. General Motors Co.*, 73 F. Supp. 2d 452, 460 (D.N.J. 1999) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d Cir. 1994)). Rather, "[i]n the final analysis, [t]he touchstone of Rule 702 ... is the helpfulness of the expert testimony, i.e., whether it will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* (citations and internal quotation marks omitted). Thus, "the perceived flaws in an expert's testimony often should be treated as matters properly to be tested in the crucible of the adversarial system, not as the basis for truncating that process." *Id.* at 461-62 (citations and internal quotation marks omitted). Defendant has every right to explore such perceived weaknesses by means of cross-examination and presentation of contrary evidence. Moreover, the Court will instruct the jury on the weight afforded expert testimony and the applicable burden of proof.

# CONCLUSION

Defendant Robert Bosch Tool Corporation's Motion to Exclude the Expert Testimony of Plaintiff's Expert, Dr. Robert Anderson [Doc. No. 63] is **GRANTED IN PART** and **DENIED IN PART** as set forth herein. Based on the opinions expressed in this Order, Defendant's Motion to Strike Dr. Anderson's Affidavit [Doc. No. 64] is moot.

**IT IS SO ORDERED** this 18th day of May 2018.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE